Present:  All the Justices

SOTIRI PONIRAKIS

v.  Record No. 001712        OPINION BY JUSTICE BARBARA MILANO KEENAN
                                         June 8, 2001
DAVID CHOI, M.D.

                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Stanley P. Klein, Judge


    In this appeal of a judgment in favor of a defendant in a

medical malpractice action, we consider whether the trial court

erred in instructing the jury on the defense of contributory

negligence.

    Sotiri Ponirakis filed a motion for judgment against Dr. David

K. Choi[1] alleging, among other things, that Dr. Choi was negligent in

failing to detect and treat Ponirakis's lupus nephritis, a kidney

disease.  Ponirakis alleged that this delay in treatment caused him

to suffer kidney failure, and that proper treatment would have

prevented this result.

    The following evidence was presented at trial.  In July 1994,

shortly after his graduation from high school, Ponirakis experienced

"flu like" symptoms and noticed that his urine was "dark colored."

He went to see his "primary care" physician, Dr. Paul Salbert, who

ordered certain blood tests and a urine study.  While the results of

the blood tests were "normal," the urine study revealed that

Ponirakis had blood and protein in his urine, and Ponirakis

testified that Dr. Salbert informed him of that fact.  Dr. Salbert also arranged for Ponirakis to have an intravenous pyelogram (IVP), an "x-ray" study of the kidneys, which was performed in October 1994.  Ponirakis testified that the IVP showed that his kidneys were "normal."

After the IVP was performed, Ponirakis again saw Dr. Salbert, who ordered additional blood tests and a second urine study.  Although the blood test results were "normal," the second urine study again revealed that Ponirakis had blood and protein in his urine.  As a result, in March 1995, Dr. Salbert referred Ponirakis to a urologist.  Ponirakis saw the urologist and discussed with him the episodes of blood and protein in his urine.  The urologist ordered a third urine study that also showed the presence of blood and protein in Ponirakis's urine.  The urologist advised Ponirakis to see Dr. Salbert for a "follow-up" appointment, and Ponirakis did so in April 1995.  Ponirakis testified that neither Dr. Salbert nor the urologist recommended any treatment or additional testing.

Although the results of these urine studies indicated that the amount of blood and protein in Ponirakis's urine was "significant," the record does not reflect that either Dr. Salbert or the urologist gave Ponirakis any explanation for these elevated levels of blood and protein.  When asked what his understanding of the "problem" was at that time, Ponirakis testified, "Just that there was blood in my

_____

[1]Ponirakis also named additional defendants in his motion for judgment.  The disposition of the case with respect to those other

2

urine." Ponirakis also testified that no doctor had ever given him "any specific treatment for this blood in [his] urine." Ponirakis's father, who testified that he had accompanied his son to "99 percent" of his visits to doctors, stated that neither he nor his son knew anything about the significance of blood and protein in Ponirakis's urine.

In November 1996, Dr. Choi, whose practice included internal medicine and family practice, was Ponirakis's "primary care" physician. On November 14, 1996, Ponirakis saw Dr. Choi for the first time because Ponirakis was experiencing chest pain. Dr. Choi diagnosed Ponirakis with costochondritis, a condition involving tenderness "where the ribs join the muscles."

Dr. Choi testified that during his first examination of Ponirakis, he asked Ponirakis some questions, including whether Ponirakis had had "any serious diseases or operations."[2] Ponirakis testified that Dr. Choi asked whether he had had "major operations or major illnesses in the past." Dr. Choi did not ask Ponirakis whether he had ever had blood or protein in his urine, or whether he had experienced any urinary or kidney-related problems or symptoms.

In answering Dr. Choi's question, Ponirakis did not tell Dr. Choi that he had experienced episodes of blood and protein in his urine. When asked why he did not mention these episodes, Ponirakis

defendants is not at issue in this appeal.

[2]Dr. Choi also testified that the question he asked was whether Ponirakis had had "any serious disease or any significant disease in the past."

testified, "I didn't think that it was serious at the time, and plus they did a kidney x-ray and showed that I was normal."

Ponirakis testified that he was not aware of any further urinary symptoms until about July 1997. At that time, he saw that his urine was "dark colored" for the first time since July 1994, and he "was starting to feel bad again." Because of these symptoms, Ponirakis saw Dr. Choi, who ordered blood tests and a urine study. The urine study indicated that Ponirakis had blood in his urine. After reviewing the results of these tests, Dr. Choi referred Ponirakis to a nephrologist, who diagnosed Ponirakis's condition as lupus nephritis.

As a result of this disease, Ponirakis's kidneys failed. In March 1998, he was placed on kidney dialysis and, in July 1998, he underwent a kidney transplant. The transplant was unsuccessful, and the transplanted kidney was removed in October 1998. Ponirakis continues to require kidney dialysis three times a week.

Ponirakis presented expert testimony from Dr. Alan Mackintosh, a physician who is board-certified in family practice medicine. Dr. Mackintosh testified that Dr. Choi breached the applicable standard of care for a family practice physician in his treatment of Ponirakis. According to Dr. Mackintosh, a reasonably prudent family practice physician would have conducted a "review of systems" with a new patient, which would have included asking specific questions about such subjects as blood in the urine. However, Dr. Mackintosh also stated that he would have expected Ponirakis to inform Dr. Choi

4

about the prior episodes of blood and protein in his urine when asked whether he had ever had "any serious diseases or operations."

Dr. Choi presented testimony from Dr. Frederick W. Hubach, a physician who is board-certified in family medicine. Dr. Hubach testified that the applicable standard of care did not require Dr. Choi to do a complete "review of systems" on Ponirakis's first visit to Dr. Choi's office.

Dr. Choi testified that if he had learned about the past episodes of blood and protein in Ponirakis's urine when he first examined Ponirakis in 1996, he would have arranged for additional testing at that time. Dr. Choi stated that if such additional testing had been performed, the tests likely would have revealed Ponirakis's kidney problems. Dr. Choi further stated that on receipt of this information, he would have referred Ponirakis to a kidney specialist and Ponirakis's kidneys would have been saved.

Dr. Choi testified that it was "entirely Mr. Ponirakis'[s] fault" for not informing Dr. Choi of the previous episodes of blood in the urine. Dr. Choi also stated that he trusted Ponirakis to understand what a "serious disease" was, and that if Ponirakis did not understand, he should have asked Dr. Choi the meaning of the term "serious disease." Although Dr. Choi testified that tests for blood in the urine are used to "screen" a patient for "underlying disease," no evidence was presented at trial that blood and protein in the urine, by itself, is a "serious disease."

Over Ponirakis's objection, the trial court instructed the jury on the defense of contributory negligence. The jury was asked to determine whether Ponirakis was negligent during his first visit to Dr. Choi and, if so, whether Ponirakis's negligence was a proximate cause of his own injuries. The jury returned a verdict in favor of Dr. Choi, and the trial court entered judgment in accordance with the jury verdict.

On appeal, Ponirakis argues that the trial court erred in instructing the jury on the defense of contributory negligence. Ponirakis contends that, as a matter of law, his failure to disclose his past episodes of blood and protein in his urine in response to Dr. Choi's question concerning "serious diseases or operations" does not constitute contributory negligence. Ponirakis emphasizes that the record contains no evidence that the presence of blood or protein in the urine is a "serious disease." He alternatively contends that even if the presence of blood and protein in the urine indicates the presence of a "serious disease," Dr. Choi failed to produce evidence that Ponirakis knew or should have known that fact.

In response, Dr. Choi contends that the trial court correctly instructed the jury on the defense of contributory negligence. He asserts that the evidence was sufficient to support a finding that Ponirakis was negligent when he failed to disclose the prior episodes of blood and protein in his urine in response to Dr. Choi's question. Dr. Choi argues that the jury properly was allowed to determine whether, as a matter of fact, Dr. Choi's question would

have prompted a reasonable person in Ponirakis's position to disclose these prior episodes.  We disagree with Dr. Choi's arguments.

Contributory negligence is a defense that is based on the objective standard of whether a plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances.  Hoar v. Great Eastern Resort Management, Inc., 256 Va. 374, 390, 506 S.E.2d 777, 787 (1998); Artrip v. E.E. Berry Equipment Co., 240 Va. 354, 358, 397 S.E.2d 821, 823-24 (1990).  The essence of contributory negligence is carelessness.  Artrip, 240 Va. at 358, 397 S.E.2d at 823-24.  The defendant has the burden of proving contributory negligence by the greater weight of the evidence.  Gravitt v. Ward, 258 Va. 330, 335, 518 S.E.2d 631, 634 (1999); Artrip, 240 Va. at 358, 397 S.E.2d at 823.

In order for contributory negligence to bar recovery by a plaintiff, the plaintiff's negligence must be concurrent with the defendant's negligence.  Gravitt, 258 Va. at 335, 518 S.E.2d at 634; Eiss v. Lillis, 233 Va. 545, 552, 357 S.E.2d 539, 543 (1987); Lawrence v. Wirth, 226 Va. 408, 412, 309 S.E.2d 315, 317 (1983).  In the medical malpractice context, this requirement means that the patient's negligent act must be contemporaneous with the main fact asserted as the negligent act of the physician.  Id.

Generally, an issue whether a plaintiff is guilty of contributory negligence is a question of fact to be decided by the trier of fact.  Artrip, 240 Va. at 358, 397 S.E.2d at 823; Stevens

7

v. Ford Motor Co., 226 Va. 415, 420-21, 309 S.E.2d 319, 322-23 (1983). However, before an issue of contributory negligence may be submitted to a jury, there must be more than a scintilla of evidence to support a finding that the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances. See Gravitt, 258 Va. at 336, 518 S.E.2d at 634; Ring v. Poelman, 240 Va. 323, 327, 397 S.E.2d 824, 827 (1990); Yeary v. Holbrook, 171 Va. 266, 287-88, 198 S.E. 441, 451 (1938).

Applying these principles, we conclude that as a matter of law there was no evidence that Ponirakis was negligent in failing to disclose the prior episodes of blood and protein in his urine in response to Dr. Choi's question whether he had experienced any "serious diseases or operations." While the evidence indicates that the presence of blood or protein in the urine is a symptom of "underlying disease," nothing in the record supports a finding that the presence of blood and protein in the urine itself constitutes a "serious disease." In addition, the record contains no evidence that a reasonable patient in a similar situation should have asked his physician to explain the physician's understanding of the term "serious diseases or operations."

The evidence also does not support a conclusion that Ponirakis knew, or that a reasonable person in Ponirakis's position should have known, that the prior episodes of blood and protein in his urine indicated the presence of a "serious disease." Ponirakis testified that his physicians never informed him that this symptom

8

indicated the presence of a "serious disease," and Dr. Choi failed to produce evidence to contradict this testimony.

Our conclusion that the record does not contain any evidence of contributory negligence is not altered by Dr. Mackintosh's testimony that he would have expected Ponirakis to disclose his past episodes of blood and protein in his urine in response to Dr. Choi's question. That testimony was irrelevant to the issue of Ponirakis's contributory negligence because the testimony addressed only Dr. Mackintosh's subjective expectations, which had no bearing on the issue of what a reasonable person in Ponirakis's position should have done.

For the same reason, Dr. Choi's testimony that he trusted Ponirakis to understand the meaning of the term "serious disease," and to ask for clarification if he did not, also was irrelevant. Dr. Choi's expectations concerning his patients' responses to his questions were not evidence of how a reasonable person in Ponirakis's situation would have responded to the question at issue. As stated above, Dr. Choi failed to present any evidence that his question would have caused a reasonable person in Ponirakis's position to seek clarification of the term "serious disease."

Since there was no evidence to support a contributory negligence instruction, the trial court erred in instructing the jury on that issue. We cannot determine from the record whether the jury based its verdict on that issue or on a determination that Dr. Choi was free of primary negligence. Therefore, we cannot say that

9

the erroneous instruction did not affect the jury's determination, and we must presume that the jury relied on the erroneous instruction in reaching its verdict.  See Gravitt, 258 Va. at 337, 518 S.E.2d at 635; Clohessy v. Weiler, 250 Va. 249, 253-54, 462 S.E.2d 94, 97 (1995).[3]

For these reasons, we will reverse the trial court's judgment and remand the case for a new trial.

Reversed and remanded.

---

[3] We find no merit in Dr. Choi's argument that Ponirakis failed to preserve his objection to the contributory negligence instruction because he did not request a special verdict form requiring the jury to state whether it based its verdict on the absence of primary negligence or on contributory negligence.  Ponirakis timely stated his objection to the contributory negligence instruction, and a special verdict form would have had no bearing on the preservation of this objection.