PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PETER TAYLOR,

        *Plaintiff-Appellant,*

v.

KELLOGG BROWN & ROOT SERVICES,
INCORPORATED,

        *Defendant-Appellee.*

No. 10-1543

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(2:09-cv-00341-RGD-TEM)

Argued: October 26, 2010

Decided: September 21, 2011

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

---

Affirmed in part and vacated in part by published opinion.
Judge King wrote the opinion, in which Judge Niemeyer
joined. Judge Niemeyer wrote a concurring opinion. Judge
Shedd wrote an opinion concurring in the judgment, in which
Judge Niemeyer joined.

**COUNSEL**

**ARGUED**: William Shaw Stickman, DEL SOLE CAVA-NAUGH STROYD LLC, Pittsburgh, Pennsylvania, for Appellant. Lawrence S. Ebner, MCKENNA LONG & ALDRIDGE LLP, Washington, D.C., for Appellee. **ON BRIEF**: Raymond B. Biagini, Lisa M. Norrett, Daniel L. Russell, Jr., MCKENNA LONG & ALDRIDGE LLP, Washington, D.C., for Appellee.

---

**OPINION**

KING, Circuit Judge:

Peter Taylor appeals from the district court's dismissal of his negligence action against Kellogg Brown & Root Services, Incorporated ("KBR"). On July 27, 2007, Taylor, an enlisted United States Marine, was electrocuted and severely injured while serving on an American military base in Iraq. Taylor filed suit in the Eastern District of Virginia, alleging that his injuries were proximately caused by the negligence of KBR, a private contractor of the Army. KBR sought dismissal of Taylor's action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that his negligence claim is barred by the political question doctrine, or, in the alternative, preempted by the "combat activities" exception to the Federal Tort Claims Act (the "FTCA"). By its decision of April 16, 2010, the district court accepted both of KBR's contentions and dismissed Taylor's negligence claim. *See Taylor v. Kellogg Brown & Root Servs., Inc.*, No. 2:09-cv-00341 (E.D. Va. Apr. 16, 2010) (the "Opinion").[1] As explained below, we affirm the judgment on the basis that an adjudication of Taylor's claim against KBR would necessarily implicate a political question, which the

---

[1]The Opinion is found at J.A. 3-24. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

federal courts lack jurisdiction to decide. Accordingly, we need not reach the FTCA preemption issue and we vacate that aspect of the district court's Opinion.

## I.

### A.

On July 24, 2009, Taylor initiated this civil action, alleging a single common law negligence claim against KBR.[2] When the underlying events occurred in July 2007, Taylor was stationed at Marine Camp Fallujah near the city of Fallujah, Iraq (the "Camp"), where he served as a Hospital Corpsman. Inside the Camp were a tank ramp and a related assault vehicle ramp (collectively, the "Tank Ramp"). The Tank Ramp was used for the general maintenance of Marine tanks, amphibious assault vehicles, and humvees, and was the only Camp facility where tank maintenance occurred.

On July 27, 2007, the Tank Ramp's main generator malfunctioned. Because there had been several such power outages, a group of Marines, including Taylor, decided to install a wiring box at the Tank Ramp and hook up their own generator. When the Marines began installing the wiring box, the Tank Ramp's main generator had been turned off. While the Marines were working, however, several KBR technicians arrived at the Tank Ramp to perform repairs. They were promptly advised by the Marines that work was being accomplished on the Tank Ramp's main generator, which was not to be turned on until the Marines confirmed that it was safe

---

[2]Our factual recitation is drawn primarily from the Opinion, the Complaint, and deposition testimony. The facts relevant to our disposition of this appeal are not disputed — save for one that was resolved by the district court after limited jurisdictional discovery, discussed *infra*. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (recognizing that district court should conduct limited jurisdictional discovery to resolve factual disputes). That particular factual dispute has no bearing on our disposition.

to do so. Although the technicians agreed to the Marines' request, one of them nevertheless turned on the main generator while the Marines were working on the wiring box.[3] As a result, a powerful electrical current surged through the wiring box where Taylor was working, causing him to be badly electrocuted and suffer severe injuries.

## B.

On November 23, 2009, KBR filed its Rule 12(b)(1) motion to dismiss Taylor's negligence claim for lack of subject matter jurisdiction.[4] KBR's essential assertions were two-fold: (1) that adjudication of Taylor's claim would require a judicial assessment of military operations and military decisions made in fighting the Iraq War and thus presented a non-justiciable political question; and (2) that Taylor's claim is preempted by the "combat activities" exception to the FTCA, spelled out in 28 U.S.C. § 2680(j). With the motion's supporting memorandum, KBR filed nine exhibits, including the declarations of the Camp's "Mayor," Marine Major Omar Randall, and two enlisted Marines.[5]

---

[3]In support of Taylor's negligence claim against KBR, the Complaint specifically alleges that,

> upon being informed of [Taylor's] work on the wiring box and agreeing not to turn on the main generator, KBR assumed the particular duty not to turn on the main generator and had actual knowledge that turning on the generator would cause serious injury to [Taylor].

Complaint ¶ 24. (The Complaint is found at J.A. 34-42.)

[4]Rule 12(b)(1) specifies that a defense of lack of subject matter jurisdiction may be asserted by motion made before pleading if a responsive pleading is allowed. Although KBR's motion to dismiss only asserts that it was being made pursuant to "Rule 12," the supporting memorandum clarifies that it was being pursued under Rule 12(b)(1).

[5]The other six exhibits filed with KBR's memorandum were: (1) a "Task Order" explaining KBR's responsibilities at the Camp; (2) a copy of a document termed "Army Facilities Management"; (3) the "Army

On December 4, 2009, Taylor filed in the district court a legal memorandum opposing KBR's Rule 12(b)(1) motion. Taylor therein contended, inter alia, that the political question doctrine does not apply because his negligence claim was lodged against a private corporation and no decisions of the legislative or executive branches were implicated. More particularly, Taylor maintained that any military orders should be taken as "external constraints" within which KBR's negligent conduct against Taylor could be independently considered. On December 10, 2009, KBR responded to Taylor's opposition, contending that KBR's defenses to Taylor's negligence claim would require the court to second-guess military policies, thus implicating decisions of the executive branch.

On February 1, 2010, the district court conducted a nonevidentiary proceeding concerning KBR's Rule 12(b)(1) motion, and KBR specifically advised the court that it would be presenting a contributory negligence defense.[6] In response, the court requested additional submissions on two subjects: (1) the characteristics of the Tank Ramp; and (2) the situation on the ground in Fallujah, specifically the nature of the military hostilities, during the relevant time period. The following day, the court entered a conforming order authorizing the parties to conduct limited jurisdictional discovery. Then, on February 18, 2010, the court clarified its February 2 order and directed, inter alia, that the deposition of Major Randall be completed

---

Safety Program," outlining Army safety regulations; (4) the "Sand Book," a manual on construction and base camp development; (5) regulations pertaining to the "Logistics Civil Augmentation Program," under which the Army hires private contractors; and (6) "The Safety Corner," a Marine Corps safety presentation.

[6]The parties agree that Virginia law applies to Taylor's negligence claim against KBR. In Virginia, contributory negligence is a complete defense to such a claim, "based on the objective standard of whether a plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." *Ponirakis v. Choi*, 546 S.E.2d 707, 710 (Va. 2001); *see also* Opinion 11 n.4.

by the end of the month, and that KBR produce, to both Taylor and the court, the relevant contract between KBR and the Army (the "Contract").

Pursuant to the district court's discovery orders, the parties conducted the deposition of Major Randall, and it was filed in connection with the Rule 12(b)(1) motion. The parties also filed a map of the Camp, a copy of a Freedom of Information Act request regarding Taylor's injuries, and the Contract itself. KBR then made what it called a "Supplemental Submission" on the Rule 12(b)(1) motion, describing the hostilities in Fallujah and the Camp's role therein, and explaining its contentions concerning the political question doctrine and the FTCA's combat activities exception. Taylor made his own supplemental submission opposing the Rule 12(b)(1) motion, maintaining that the political question doctrine was not applicable for at least three reasons: (1) Taylor's injuries had not occurred during a combat operation; (2) KBR technicians were not under the plenary control of the military when they arrived to conduct repairs on the Tank Ramp's main generator; and (3) there was a relevant factual dispute concerning whether the Marines' actions in installing the wiring box were authorized.[7]

## C.

### 1.

By its Opinion of April 16, 2010, the district court granted KBR's Rule 12(b)(1) motion to dismiss, ruling in KBR's favor on both the political question doctrine and the FTCA's combat activities exception. As the Opinion related, the Camp is located approximately fifteen miles outside Fallujah and combat activities were ongoing in 2007. The military forces

---

[7]In resolving this factual dispute, *see supra* note 2, the Opinion concluded that the Marines had not been authorized to work on the Tank Ramp. *See* Opinion 13.

at the Camp included a Marine combat logistics battalion, a Naval construction regiment, a Marine communications battalion, a Marine transportation company, and Iraqi army units. Other than the Iraqi army units, the Camp housed approximately 5000 personnel, with approximately 1200 of them being members of a Marine Corps regimental combat team. The military units at the Camp were directly involved in combat operations and came under fire at least once or twice a month. Among their other duties, the Marines at the Camp provided support for supply convoys. The day-to-day support functions of the Camp were overseen by a group of Marine personnel called the "Mayor's Cell." During Taylor's service at the Camp, Major Randall commanded the Mayor's Cell. However, the Camp and its personnel depended on military contractors to keep things running. KBR was one of the several contractors providing support to the military operations at the Camp.

On December 14, 2001, KBR was awarded the Contract to provide maintenance and management support at military bases in Iraq.[8] The Contract specified that KBR was to provide support for the Multi National Force-Iraq, which serves as "the overall headquarters" of all coalition forces in Iraq. J.A. 371. As such, although the Contract was made with the Army, KBR provided support for non-Army personnel as well. Of relevance here, KBR was obliged to install, inspect, operate, repair, and maintain the electrical generators at the Camp. The Contract delineated a "Statement of Work" for KBR and provided, inter alia, that

> [KBR] shall be responsible for safety of employees
> and base camp residents during all [KBR] operations

---

[8]The Contract was initially awarded to an entity called "Kellogg Brown & Root, Incorporated." Pursuant to a novation made on August 1, 2003, the Contract was transferred to a subsidiary entity that is the defendant here, "Kellogg Brown & Root Services, Incorporated," which we call "KBR."

conducted in accordance with this Statement of Work and the Army and Occupational Safety and Health Administration (OSHA) safety regulations and guidance as it applies to the Iraq Theatre of Operations.

*Id.* at 584-85.

The Camp employed two methods for supplying electric power to its various facilities. The first of those methods, termed "prime power," utilized a connection to the Camp's primary power plant, while the alternative method involved connecting a particular user to an individual generator. Certain critical facilities of the Camp were authorized to use redundant power sources, typically in the form of secondary and backup generators. The use of such secondary or backup power, however, had to be authorized by the Mayor's Cell. A facility might be denied an authorization of backup power due to "limited resources" or "priority of resources." J.A. 403-04. For example, the Camp's "battle square" was powered by multiple backup generators, while certain facilities at the Camp had no backup power at all. The Tank Ramp was among the latter group; it was powered solely by an individual generator and had not been authorized by the Mayor's Cell for secondary or backup power.

2.

In assessing KBR's political question contention, the district court explained that "the key inquiry is whether a court will have to consider the wisdom of military operations and decision-making, or whether it need only consider the private contractor's performance." Opinion 9 (internal quotation marks omitted).[9] The court also recognized that, in making its

---

[9]Pursuant to the political question doctrine, the judiciary is deprived of jurisdiction to assess decisions exclusively committed to a separate branch of government. For example, most military decisions lie solely within the purview of the executive branch. *See Baker v. Carr*, 369 U.S. 186, 217 (1962).

Rule 12(b)(1) analysis, it was entitled to look beyond the allegations of the Complaint and consider how Taylor's negligence claim would be litigated.

The Opinion concluded that Taylor's negligence claim gave rise to a nonjusticiable political question that the court was not permitted to assess. Specifically, KBR had placed the district court on notice that it would raise a contributory negligence defense, requiring a judicial assessment of military operations and decisions made in the Iraq combat theatre. As emphasized by the court,

> [KBR] has indicated that it will defend this action, at least in part, by raising a defense of contributory negligence. This defense will inevitably force the Court to question the judgment not only of [Taylor] himself, but also of the United States military.

*Id.* at 11. As the Opinion explained, a judicial assessment of the contributory negligence defense would "require the Court to decide whether 'the Marines' made a reasonable decision" to install a wiring box at the Tank Ramp. *Id.* at 12. The court rejected Taylor's contention that KBR's actions could be isolated and the military's orders treated as "external constraints," because doing so "would completely eliminate the political question doctrine in contractor suits." *Id.* at 12. The court drew legal support for its conclusion from the Eleventh Circuit's recent decision in *Carmichael v. Kellogg, Brown, & Root Services, Inc.*, 572 F.3d 1271, 1275 (11th Cir. 2009). There, the court of appeals concluded that determining the amount of "control" that the military exercised over a contractor was merely a game of semantics, since KBR (in that case) "was operating at all times under the orders and determinations made by the military." *Carmichael*, 572 F.3d at 1284.

In further explaining its political question ruling, the district court emphasized that

> the military determined how power should be sup-
> plied to the [Tank Ramp]. The military authorized
> certain individuals to perform electric maintenance
> work, and forbade others from doing so. Members of
> the military — acting without proper authorization
> — decided to install a backup generator.

Opinion 13. An assessment of the contributory negligence defense, according to the district court, would therefore "require an evaluation of several command decisions," such as "whether back-up power should have been supplied to the Tank Ramp." *Id.* at 12. Because it was the military that (1) decided how to supply electric power to the Tank Ramp, and (2) authorized who could work on the Camp's generators, the Opinion concluded that it was "not possible to view this case in a vacuum, nor is it possible to resolve this case without questioning actual sensitive judgments made by the military." *Id.* at 13. (internal quotation marks omitted). As a result, the district court ruled that Taylor's negligence claim was barred because it presented a nonjusticiable political question.[10] Dismissal under Rule 12(b)(1) was thus warranted, and a judg-

---

[10]The district court also analyzed the FTCA's combat activities exception and decided that the exception barred Taylor's negligence claim. *See* Opinion 13-20. The FTCA generally authorizes damage claims against the United States for the tortious actions of its employees, in the same manner and to the same extent that a private individual would be liable under the law of the place where the tortious conduct occurred. *See* 28 U.S.C. § 2674. The "combat activities" exception of the FTCA precludes Government liability "arising out of the combat activities of the military or naval forces, or the Coast Guard, during a time of war." *Id.* § 2680(j). In ruling on the combat activities exception, the district court adopted the D.C. Circuit's reasoning in *Saleh v. Titan Corps.*, which explained that, "[d]uring wartime, where a private service contractor is integrated into combat activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted." 580 F.3d 1, 9 (D.C. Cir. 2009). The district court concluded that KBR's maintenance of the Tank Ramp qualified as combat activity because, as the court observed, "tanks are not deployed to peddle popsicles." Opinion 19.

ment to that effect was entered in favor of KBR on April 16, 2010.[11]

Taylor filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009).

## III.

## A.

In pursuing this appeal, Taylor contends that his negligence claim is not barred by the political question doctrine — and that the district court erroneously ruled to the contrary — because an adjudication of the claim would not require any assessment of the Army's retention of KBR or the terms of the Contract. KBR, in turn, maintains that the court correctly ruled that Taylor's negligence claim is barred under the political question doctrine because our adjudication of the claim would require a judicial assessment of military decisions made in a combat theatre — that is, decisions with respect to whether backup power was to be supplied to the Tank Ramp and whether the Marines should have been authorized to install a backup generator at the Tank Ramp on their own accord.

---

[11]On April 19, 2010, the district court entered an amended judgment of dismissal correcting its initial judgment that had inadvertently designated the Rule 12(b)(1) motion as being "denied."

1.

The political question doctrine had its genesis in the Supreme Court's decision of *Marbury v. Madison*, where Chief Justice Marshall explained that "[q]uestions, in their nature political, of which are, by the constitution and laws, submitted to the executive, can never be made in this court." 5 U.S. (1 Cranch) 137, 170 (1803). More recently, in *Baker v. Carr*, the Court articulated a six-factor test for assessing whether a particular claim presents a nonjusticiable political question. *See* 369 U.S. 186, 217 (1962). Three of those factors — the first, second, and fourth — are pertinent here:

- First, an assessment of whether there has been "a textually demonstrable constitutional commitment of the issue to a coordinate political department";

- Second, whether there is "a lack of judicially discoverable and manageable standards for resolving [the question]"; and

- Fourth, whether there is an apparent impossibility of a court's independent resolution of the question "without expressing lack of the respect due to coordinate branches of government."

*Id.*[12] KBR contends that an adjudication of Taylor's negligence claim would implicate a judicial assessment that runs afoul of these three *Baker* factors. Specifically, the district court would be required to assess the military's decision on

---

[12]The remaining three *Baker* factors are: Third, whether there is an apparent "impossibility of deciding [the question] without an initial policy determination of a kind clearly for nonjudicial discretion"; fifth, whether there is "an unusual need for unquestioning adherence to a political decision already made"; and, sixth, whether there is a "potentiality of embarrassment from multifarious pronouncements by various departments on one question." 369 U.S. at 217.

how to supply power to the Tank Ramp (first factor); there is no manageable judicial standard for assessing whether the Marines involved in the underlying incident had been trained properly (second factor); and, finally, an adjudication of Taylor's claim would show a lack of respect to the executive branch (fourth factor).

In evaluating whether Taylor's negligence claim against KBR presents a nonjusticiable political question, we must recognize that KBR is not a part of the military. Nonetheless, we are obliged to carefully assess the relationship between the military and KBR, and to "look beyond the complaint, [and] consider[ ] how [Taylor] might prove [his] claim[ ] *and* how KBR would defend." *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008); *see Carmichael v. Kellogg, Brown, & Root Servs., Inc.*, 572 F.3d 1271, 1292 (11th Cir. 2009) (deeming political question doctrine applicable because KBR would defend on ground that military decisions caused accident).

2.

We begin our inquiry by identifying the applicable legal principles concerning political questions and military operations. Our decision in *Tiffany v. United States* is helpful in this respect. *See* 931 F.2d 271 (4th Cir. 1991). There, a private pilot had utilized an unauthorized flight plan, and, as a result, several military planes scrambled over North Carolina to determine whether the private plane was hostile. During their encounter, one of the military aircraft collided with the private plane, causing it to crash. Because the Government defended the estate's FTCA claim by asserting that the decision to scramble fighter planes was related to the national defense, our Court was called on to decide whether the political question doctrine applied. We concluded that the FTCA claim presented a nonjusticiable issue, emphasizing that the plaintiff could not "reshape the national response to threats of hostile air attack through the mechanism of tort law." *Id.* at 278. As

Judge Wilkinson cogently explained, however, our decision did not stand for the proposition

> that any time a branch of the military asserts a national defense interest to justify its acts, the court must avert its eyes. The military does not enjoy a blanket exemption from the need to proceed in a non-negligent manner. When conducting training exercises, for example, or acting in a civilian arena, national defense interests may be more remote and the military faces different restrictions.

*Id.* at 280.

Because the military (and certainly a military contractor) is not, as a matter of course, insulated from liability when it asserts a "national defense interest," we must, to resolve this appeal, gauge the degree to which national defense interests may be implicated in a judicial assessment of Taylor's negligence claim. Insofar as *Tiffany* did not address the justiciability of a negligence claim initiated by a serviceman against a private contractor concerning events that occurred in a combat theatre, we look to our sister circuits for some guidance.

3.

In assessing the applicability of the political question doctrine, the district court identified and relied on the 2009 Eleventh Circuit decision in *Carmichael*. There, a negligence claim initiated by Carmichael's wife against KBR for injuries that her husband, an Army Sergeant, had suffered in Iraq was held barred by the political question doctrine. *See* 572 F.3d at 1275. Carmichael had been injured when a truck driven by a KBR employee wrecked while moving in a military convoy, and it was alleged that KBR had negligently failed to safely navigate a dangerous curve. The convoy had been travelling through notoriously hostile territory and was heavily militarized. Furthermore, the KBR truck driver was under the "ple-

nary control" of the military, which had decided when the convoy would take place, where it would travel, and how fast it would move. *Id.* at 1276. The court concluded that the political question doctrine therefore barred Carmichael's claim. Pursuant to *Carmichael*, if a military contractor operates under the plenary control of the military, the contractor's decisions may be considered as de facto military decisions.

Taylor contends that we should evaluate the reasonableness of KBR's acts within the parameters of the military's orders — that is, deeming such orders to be "external constraints" within which KBR's allegedly negligent acts should be assessed. By way of analogy, Carmichael's wife alleged that KBR employees — rather than the military — controlled the truck in which Carmichael had been injured and, notwithstanding military regulations, the KBR driver could have avoided the accident by slowing down or coming to a stop as he approached the curve where the accident occurred. *Carmichael*, 572 F.3d at 1284. The Eleventh Circuit rejected her contention, however, concluding that the political question doctrine barred her negligence claim against KBR because its driver was under military orders and the defense would inevitably rely on such orders. *Id.* at 1284-85.

More specifically, the court of appeals concluded that Mrs. Carmichael's claim ran afoul of the first and second *Baker* factors. On the first factor, the court recognized that an adjudication of her negligence claim would involve assessing issues constitutionally committed to the executive branch, "[b]ecause the circumstances under which the accident took place were so thoroughly pervaded by military judgment and decisions." *Carmichael*, 572 F.3d at 1282-83. Assessing the second *Baker* factor, the court observed that there were no judicially discoverable and manageable standards for resolving the dispute — that is, because the claim was for KBR's negligence, the court had no way of assessing reasonableness in the context of military orders and regulations. *Id.*

A similar tack to the application of the political question doctrine was taken in the Fifth Circuit's decision in *Lane v. Halliburton*, 529 F.3d 548, 554 (5th Cir. 2008). There, the plaintiffs were all non-military personnel. Specifically, civilian truck drivers, as well as their spouses and dependents, were pursuing claims against KBR for injuries sustained while working for KBR in Iraq. Their complaints alleged, inter alia, fraud and misrepresentation, and the litigation centered on KBR's promise of a safe work environment. The district court had dismissed the consolidated cases because they raised nonjusticiable political questions, in that KBR was operating under orders of the military. On appeal, the Fifth Circuit reversed and remanded. In so ruling, the court of appeals concluded that, although the military was involved in KBR's operations in Iraq, "the Plaintiffs have presented a plausible set of facts as to the fraud and misrepresentation claims that might allow causation to be proven under one tort doctrine without questioning the Army's role." *Lane*, 529 F.3d at 561-62. As such, at least on the fraud and misrepresentation claims, jurisdiction was not necessarily barred by the political question doctrine and additional discovery was warranted.

In this case, the district court did not directly rely on the *Baker* factors, but deemed the *Carmichael* decision to be persuasive and ruled that Taylor's negligence claim was barred by the political question doctrine, explaining that "both Plaintiff *and* Defendant were operating at all times under orders and determinations made by the military." Opinion 13 (internal quotation marks omitted). The court reasoned that "[i]t is simply not possible to view this case in a vacuum," emphasizing that KBR was under orders of the military on how electric power would be supplied to the Tank Ramp and concerning who could work on the generators. *Id.*

Although the district court may have correctly recognized that Taylor's negligence claim could not be viewed in isolation; nonetheless, that KBR was acting under orders of the

military does not, in and of itself, insulate the claim from judicial review. In disposing of this appeal, we must also assess, first, the extent to which KBR was under the military's control, and, second, whether national defense interests were closely intertwined with the military's decisions governing KBR's conduct.

4.

Unlike the situation in *Carmichael*, where the KBR truck driver was under the military's plenary control, the Contract specifies that "[t]he contractor shall be responsible for the safety of employees and base camp residents during all contractor operations." J.A. 584. Moreover, the Contract provides that "the contractor shall have exclusive supervisory authority and responsibility over employees." *Id.* at 592. In other words, unlike in *Carmichael* — where the military had plenary control over both the convoy and KBR — in this case the military was not exercising direct control.

Because of the manner that responsibility was delegated to KBR, the district court may have been incorrect in concluding that "treat[ing] the military's decisions as external constraints . . . would completely eliminate the political question doctrine from contractor suits." Opinion 12. Indeed, with respect to generator maintenance at the Camp, KBR was nearly insulated from direct military control and was itself solely responsible for the safety of all "camp residents during all contractor operations." J.A. 584.

Nonetheless, the district court correctly concluded that a decision on the merits of Taylor's negligence claim would require the judiciary to question "actual, sensitive judgments made by the military." Opinion 11 (internal quotation marks omitted). More specifically, an analysis of KBR's contributory negligence defense would "invariably require the Court to decide whether . . . the Marines made a reasonable decision" in seeking to install the wiring box to add another elec-

tric generator at the Tank Ramp. *Id.* (internal quotation marks omitted). In assessing the contributory negligence defense and the reasonableness of Taylor's conduct, the court would be obliged to evaluate military decisions made by the Mayor's Cell, including "whether back-up power should have been supplied to the Tank Ramp area." *Id.* As the application of our *Tiffany* decision makes clear, such an assessment, especially the issue of whether to provide a backup generator for the Tank Ramp, is beyond the scope of judicial review.[13] In these circumstances, therefore, the political question doctrine deprived the district court of jurisdiction to adjudicate the merits of Taylor's negligence claim.

## B.

Finally, because we agree with the district court that the political question doctrine applies here, the second appellate issue — whether Taylor's negligence claim is preempted by the FTCA's combat activities exception — is rendered moot. And, as we recently explained, our "customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010) (citing *Alvarez v. Smith*, 130 S. Ct. 576, 581 (2009)). Typically, however, such a vacatur is only warranted where — as here — "mootness has occurred through happenstance, rather than

---

[13]More specifically, as *Tiffany* explained, such an assessment would run afoul of the second and fourth *Baker* factors. In *Tiffany* itself, these factors were implicated because (1) "[j]udges have no discoverable and manageable standards for resolving whether necessities of national defense outweigh risks to civilian aircraft," and (2) "[n]or [could] we even undertake independent resolution without expressing lack of the respect due coordinate branches of government." *Tiffany*, 931 F.2d at 279 (internal quotation marks and alteration omitted). Here, we have no discoverable and manageable standards for evaluating how electric power is supplied to a military base in a combat theatre or who should be authorized to work on the generators supplying that power. Furthermore, any such judicial assessment thereof would show a lack of respect for the executive branch.

through the voluntary action of the losing party." *Id.* at 162 (internal quotation marks omitted). Otherwise, a party seeking appellate review of an adverse ruling, but which is frustrated in that regard by "the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.* (internal quotation marks omitted).

Because the political question doctrine deprives the federal courts of jurisdiction to resolve Taylor's negligence claim, a ruling on the FTCA issue would be little more than an advisory opinion on a constitutional question — something the *Ashwander* doctrine obliges us to avoid. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341-47 (1936) (Brandeis, J., concurring) (explaining that courts should not "decide questions of a constitutional nature unless absolutely necessary"). More specifically, our potential resolution of the FTCA issue implicates the Supremacy Clause of the Constitution. *See* U.S. Const. art VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . ."); *Koohi v. United States*, 976 F.2d 1328, 1333 (9th Cir. 1992) (recognizing that FTCA combat activities exception preempts state law tort claim). In such circumstances, we are obliged to vacate the FTCA ruling, which constitutes the moot aspect of the district court's judgment.

## IV.

Pursuant to the foregoing, we affirm in part and vacate in part.

*AFFIRMED IN PART*
*AND VACATED IN PART*

NIEMEYER, Circuit Judge, concurring:

For the reasons stated both in Judge King's opinion and in my opinion in *Al Shimari v. CACI International, Inc.*, ___ F.3d ___, No. 09-1335 (4th Cir. Sept. 21, 2011), I believe the

political question doctrine requires dismissal of this case. I also believe that federal preemption, as articulated by Judge Shedd's opinion and by our decision in *Al Shimari*, supports dismissal of this case. As a result, I concur in both Judge King's opinion and Judge Shedd's opinion with respect to federal preemption, thus providing alternative grounds for the judgment.

SHEDD, Circuit Judge, concurring in the judgment:

Because, at this early stage, I do not believe deciding Peter Taylor's case will cause the Court to "inevitably be drawn into a reconsideration of military decisions," *Lane v. Halliburton Corp.*, 529 F.3d 548, 563 (5th Cir. 2008), I am not convinced that the political question doctrine applies in this case. *See also McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1365 (11th Cir. 2007) (same). I concur in the judgment, however, because I agree that the district court correctly dismissed Taylor's negligence claim.

For the reasons stated in *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), and in *Al Shimari v. CACI International*, No. 09-1335 (4th Cir. 2011) and *Al-Quraishi v. L-3 Services, Inc.*, No. 10-1891 (4th Cir. 2011) — and also as found by the district court — I believe that Taylor's claim is displaced by the uniquely federal interests in this case represented by the Federal Tort Claims Act's combatant activities exception, 28 U.S.C. § 2680(j). Under this approach, "where a civilian contractor is integrated into wartime combatant activities over which the military broadly retains command authority, tort claims arising out of the contractors' engagement in such activities are preempted." *Al Shimari*, slip op. at 11-12. "Combatant activities" include "activities both necessary to and in direct connection with actual hostilities," *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948), a standard satisfied here.