DAVIS, Circuit Judge,
concurring:
I concur in the majority opinion but with an important difference in emphasis; hence, I offer these further thoughts.
The National Geospatial-Intelligence Agency (the “NGA”) concluded, after a thorough investigation of Appellant Mah-moud Hegab’s background and qualifications, that its award of a top secret security clearance (an essential requirement of his federal employment with the agency) was warranted as “clearly consistent with the interests of national security.” See *799 Appellees’ Br. at 4 (quoting Executive Order 12968, § 8.1(b), 60 FecLReg. 40245 (Aug. 7, 1995)). Hegab had spent several months on the job, and after a further investigation and review of Hegab’s-. background and qualifications, the NGA'deter-mined, to the contrary, that a top secret security clearance was not “clearly consistent with the interests of national security.” Consequently, having lost his top secret security clearance, Hegab lost his job.
What changed?
Reading the material allegations of the complaint in the light most favorable to Hegab, the only thing that changed is he got married to a dual citizen Muslim activist who, before their marriage, robustly exercised her First Amendment rights of speech and association.[1] I do not regard Hegab’s allegations as “conclusory”; rather, I regard them as “colorable” within the contemplation of our precedents.[2] Unlike the allegations in many extant cases raising claims of unconstitutional security clearance revocations,[3] the gravamen of Hegab’s cqmplaint is the alleged denial of equal protection, in violation of the Fifth Amendment.
Thus, I would conclude on this record that, even after the most grudging application of Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), Hegab has stated cognizable claims of unconstitutional adverse .action by a governmental agency. There is an impenetrable barrier, however, to the possibility that Hegab’s claims might proceed past the pleading stage. Specifically, Hegab’s claims raise a non-justiciable political question — i.e., whether the agency revoked his security clearance on legitimate national *800 security grounds, or whether the decision “was based solely on [Hegab’s] wife’s religion, Islam[;] her constitutionally protected speeeh[;] and her [mere] association with, and employment by, an Islamic faith-based organization.” J.A. 21.
“Pursuant to the political question doctrine, the judiciary is deprived of jurisdiction to assess decisions exclusively committed to a separate branch of government.” Taylor v. Kellogg Brown & Root Servs., Inc., 658 F.3d 402, 407 n. 9 (4th Cir.2011).[4] Rudimentary separation of powers standards demonstrate the exclusive commitment of national security clearance decisions to the executive branch; that commitment could not be more pervasive or more clear. See, e.g., Becerra v. Dalton, 94 F.3d 145, 148 (4th Cir.1996) (“Security clearances are within the Executive’s purview, and therefore, ‘unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.’ ”) (citing Dep’t of the Navy v. Egan, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988)). Manifestly, the requirement that a security clearance be afforded a . government employee only where it is “clearly consistent with the interests of national security” simply does not admit of judicial determination; it is a political question, not a judicially reviewable question.
This case points out (once again) the difficulty facing lawyers and lower federal courts trying to make jurisprudential sense of the Supreme Court’s dictum in Webster v. Doe, 486 U.S., 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), over dissents by Justice O’Connor and Justice Sealia, that the Court desired to avoid “the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.” As the majority opinion points out, in this Circuit, we have strained mightily to pay heed to that dictum, usually by holding, as the majority opinion here does, that a plaintiff has failed to allege a “colorable constitutional claim” and that therefore subject matter jurisdiction is lacking. Reinbold v. Evers, 187 F.3d 348, 358 (4th Cir.1999).[5] None of the six justices comprising the majority in *801 Webster remain on the Court; it would be fair to express uncertainty as to the continuing viability of the twenty-five year old Webster dictum.
For now it suffices to observe that cases such as this one bring to mind the story of the three umpires sitting in a tavern discussing how they make calls on pitches when working home plate. The first said, “I call them as I see them.” The second said, “I call them as they are.” ' The third said, “They ain’t nothin’ until I call ’em.” As important as constitutional protections are for all of our fellow citizens, and as critical as the Third Branch’s role is in the vindication of those protections, the President and his designees, and no other deci-sionmakers, have the authority of the third umpire in security clearance decisions.
On the above understandings, I concur in the majority opinion.

. Hegab alleges that subject matter jurisdiction over this case rests on the general federal question statute, 28 U.S.C. §. 1331, see J.A. 5 ("this matter arises under the Constitution of the United States”), and that his claims are cognizable by virtue of "the government’s waiver of immunity under the Administrative Procedure Act,” id. Indisputably, sound authority supports Hegab’s assertion that we have subject matter jurisdiction over the constitutional claims he alleges. Trudeau v. Fed. Trade Comm’n, 456 F.3d 178 (D.C.Cir.2006) (holding that federal question jurisdiction exists over First Amendment claim by individual against the FTC, but finding claim legally insufficient); Hubbard v. Envtl. Trot. Agency, 949 F.2d 453 (D.C.Cir.1991) (affirming judgment for injunctive relief against the EPA, and remanding for consideration of an award of back-pay, after trial' of First Amendment retaliation claim instituted by rejected applicant for employment).

. It is at least arguable, as the majority opinion intimates, that Hegab essentially pled himself out of his causes of action by including such an abundant narrative of the factual bases for his disagreement with the agency’s decision. See Browning v. Clinton, 292 F.3d 235, 242 (D.C.Cir.2002) ("Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claim asserted.”) (citing Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (2d ed. 1990)); see also Bennett v. Schmidt, 153 F.3d 516, 519 (7th Cir.1998) ("Litigants may plead themselves out of court by alleging facts that establish defendants’ entitlement to prevail."). But lawyers not infrequently plead claims “on information and belief”, e.g., Kush v. Rutledge, 460 U.S. 719, 721 & n. 1, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), and courts generally understand that some ultimate facts, e.g., the existence of an invidious motivation for facially (but pretextüal) non-discriminatory adverse actions, can be pled, conformably within the strictures of Federal Rule of Civil Procedure 11, only in such a manner. At bottom, that is exactly what Hegab has done here, somewhat inartfully.

.See, e.g., Reinbold v. Evers, 187 F.3d 348, 358 (4th Cir.1999) (noting that the plaintiff-appellant had alleged that his seizure, debriefing, and ejection from a' Navy facility had "violated his rights as guaranteed under the Fourth Amendment,” "not that the suspension of his ... security clearance amounted to a constitutional violation”).

. Notably, "the [Supreme] Court has not announced whether it views the [political question doctrine] as constitutional” — and thus, jurisdictional — "or prudential.” Erwin Chemerinsky, Federal Jurisdiction 45 (5th ed. 2007). Although we have said political questions rob us of jurisdiction, see Taylor, 658 F.3d at 407 n. 9, other courts are not so certain. Cf. Oryszak v. Sullivan, 576 F.3d 522, 527 (D.C.Cir.2009) (Ginsburg, J., concurring) (observing that "it is important to distinguish among failure to state a claim, a claim that is not justiciable, and a claim over which the court lacks subject matter jurisdiction”).

. A number of courts have reconciled Egan and Webster by reasoning that Webster allows courts to review constitutional challenges to the process for making security clearance decisions, but Egan bars courts from reviewing the merits of those decisions. See, e.g., El-Ganayni v. U.S. Dep’t of Energy, 591 F.3d 176, 183 (3d Cir.2010) ("We read Egan and Webster together as holding that Article III courts have jurisdiction to hear 'constitutional claims arising from the clearance revocation process,’ even though the merits of that revocation cannot be reviewed.”) (citing Webster, 486 U.S. at 603-04, 108 S.Ct. 2047).
I have grave doubt that many federal employees whose security clearance is revoked care much about the procedures used to do so; they care about their clearance (thus, their jobs and their reputations, and not necessarily in that order). See Hill v. Dep’t of Air Force, 844 F.2d 1407, 1412 (10th Cir.1988) ("[T]he district court made no finding that the Air Force violated any particular procedure; and even if such a finding had beén made the remedy would have been a remand for the purpose of compliance with applicable procedures, not an order requiring reinstatement of Hill's clearance.”). Accordingly, I find this attempted reconciliation, based on reasoning *801 that a court could not "review the merits of 'the decision to revoke [the plaintiffs] security clearance,” but could "exercise jurisdiction over [his] constitutional claims and review them to the extent that [the court] [could] do so without examining the merits of that decision,” El-Ganayni, 591 F.3d at 183, largely incoherent in any real-life application.