Al Shimari v. CACI Premier Tech., Inc., 758 F.3d 516, 529-30 (4th Cir. 2014) (footnote, internal quotation marks, citations, and alteration omitted).
Similarly, in its 2016 decision addressing the political question doctrine, the Fourth Circuit explained:
The political question doctrine derives from the principle of separation of powers, and deprives courts of jurisdiction over controversies which revolve around policy choices and value determinations constitutionally committed to Congress *786 or, as alleged in this case, to the executive branch. This doctrine is a narrow exception to the judiciary's general obligation to decide cases properly brought before the courts. Although most military decisions are committed exclusively to the executive branch, a claim is not shielded from judicial review merely because it arose from action taken under orders of the military.
...
We turn now to consider the district court's treatment of the second Taylor factor, which asks whether a decision on the merits of the claim would require the court to question actual, sensitive judgments made by the military. The district court concluded that the plaintiffs' claims were non-justiciable under this second Taylor factor. The court explained that it was unequipped to evaluate whether the use of certain extreme interrogation measures in the theatre of war was appropriate or justified. In the court's view, adjudicating the plaintiffs' claims would impinge on the military's authority to select interrogation strategies and rules of engagement. Debates existing within the executive branch at that time regarding the propriety of certain aggressive interrogation tactics reinforced the court's conclusion.
We conclude that the above analysis that the district court conducted was incomplete. In addressing the second Taylor factor, the district court erred in failing to draw a distinction between unlawful conduct and discretionary acts that were not unlawful when committed.
The commission of unlawful acts is not based on military expertise and judgment, and is not a function committed to a coordinate branch of government. To the contrary, Congress has established criminal penalties for commission of acts constituting torture and war crimes. Therefore, to the extent that the plaintiffs' claims rest on allegations of unlawful conduct in violation of settled international law or criminal law then applicable to the CACI employees, those claims fall outside the protection of the political question doctrine. On remand, the district court must first segregate such justiciable claims in its analysis before proceeding to determine whether any claims alleging conduct that was not unlawful implicated sensitive military judgments under the second prong of Taylor.
...
In reaching this conclusion, we emphasize the long-standing principle that courts are competent to engage in the traditional judicial exercise of determining whether particular conduct complied with applicable law. Accordingly, when a military contractor acts contrary to settled international law or applicable criminal law, the separation of powers rationale underlying the political question doctrine does not shield the contractor's actions from judicial review.
Al Shimari v. CACI Premier Tech., Inc., 840 F.3d 147, 154, 157-58 (4th Cir. 2016) (internal quotation marks and citations omitted).
In February, this Court applied the Fourth Circuit's political question framework to plaintiffs' claims and concluded that plaintiffs' claims should not be dismissed under the political question doctrine because plaintiffs have adequately alleged that CACI personnel engaged in conduct that was unlawful when it was committed. See Al Shimari, 300 F.Supp.3d 758. Accordingly, the Court has already determined, and it is the law of the case, that adjudication of plaintiffs' claims does not impermissibly infringe on the political branches and plaintiffs have met the first prong of CACI's proposed two-part test.
*787 Turning to the purpose of the ATS, which CACI describes as "prevent[ing] foreign entanglements and international friction," CACI Mem. 4, the Court concludes that plaintiffs have shown that adjudication of their claims is consistent with this purpose. As the Supreme Court has explained, Congress enacted the ATS in 1789 in the wake of two "notorious episodes involving violations of the law of nations," each of which involved American nationals engaging in tortious conduct against foreign ambassadors. Kiobel, 569 U.S. at 120, 133 S.Ct. 1659. At the time, neither the federal courts nor the state courts had jurisdiction over tort suits for violations of the law of nations, which left both ambassadors without an adequate civil remedy resulting in significant international tension.[5] See id. As a result, Congress enacted the ATS to "ensur[e] the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen." Jesner, 138 S.Ct. at 1397.
Based on this history, the ATS was originally intended to apply to situations where a foreign citizen was the victim of an international law violation committed by an American national. The reasoning behind the ATS was that the failure to provide an adequate remedy to an aggrieved alien could cause significant international tension with that alien's country or even lead that country to attempt to hold the United States or the American citizen responsible. In Jesner, this purpose militated against allowing the claims to proceed because that case involved foreign plaintiffs suing a Jordanian corporation for injuries sustained in the Middle East, and Jordan considered the "litigation to be a 'grave affront' to its sovereignty." Jesner, 138 S.Ct. at 1407. By contrast, the lawsuit before this Court involves foreign plaintiffs suing an American corporate defendant, which fully aligns with the original goals of the ATS: to provide a federal forum for tort suits by aliens against Americans for international law violations. Moreover, because CACI is an American, rather than a foreign, corporation, there is no risk that holding CACI liable would offend any foreign government.[6] Lastly, unlike in Jesner and in the other ATS cases discussed by the Jesner Court, neither the United States government nor any foreign government has expressed any objection to this litigation or appeared as an amicus to express any concern with the Court's exercise of jurisdiction over plaintiffs' claims. Indeed, the United States is currently a party in this lawsuit and abstained from filing any brief in support of CACI's suggestion of a lack of subject matter jurisdiction, *788 which indicates that the United States does not believe that there are significant foreign-relations problems implicated by allowing plaintiffs' claims to proceed. Accordingly, the Court's exercise of jurisdiction over the claims in this litigation is consistent with the purposes of the ATS, and does not conflict with either the holding or reasoning in Jesner.
II. CONCLUSION
For the reasons stated above, without conceding that CACI has correctly interpreted Jesner, plaintiffs have met both prongs of CACI's proposed test and CACI's suggestion of a lack of subject matter jurisdiction will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Indeed, after one of the incidents, which involved the Secretary of the French Legion, the French Minister Plenipotentiary "lodge[d] a formal protest with the Continental Congress and threaten[ed] to leave the country unless an adequate remedy were provided." Kiobel, 569 U.S. at 120, 133 S.Ct. 1659.

The Court believes that it is necessary to underscore this distinction between Jesner and the present lawsuit. In Jesner, the question presented by the petition for a writ of certiorari, on which the circuits were and are split, involved whether the ATS categorically forecloses corporate liability, regardless of whether the corporation in question is foreign or domestic. In spite of this broad question presented, the Supreme Court's holding is explicitly confined to foreign corporations, and the focus of the Court's analysis involved the role of the political branches in conducting foreign relations. The vast majority of the circuits to have considered the question have adopted a rule allowing ATS claims to proceed against corporate defendants, see Pet. for a Writ of Certiorari at 3, 14-16, Jesner, 138 S.Ct. 1386, and Jesner's careful limiting of the analysis and holding suggests to this Court that the Jesner Court did not intend to disturb this status quo with respect to domestic corporations.